## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANE DOE, by and through next friend JOHN DOE, RICHARD ROBINSON, and YOLANDA BROWN, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>        Plaintiffs,<br><br>  v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No.  3:22-cv-2575 |

### APPLE INC.'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Apple Inc. ("Apple") hereby removes this action, originally filed as case number 20 L 206 in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, to the United States District Court for the Southern District of Illinois under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of removal, Apple states:

### I.   PRELIMINARY STATEMENT

1.   Apple is removing this action to federal court for a second time, to rejoin Plaintiffs' related claims against Apple that are already pending in this Court, due to a recent change in the case that has revealed a new basis for the Court's subject-matter jurisdiction.

2.   Plaintiffs allege Apple violated section 15(c) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(c). This claim originated as part of an action that also alleged claims under BIPA sections 15(a) and (b). In 2020, Apple removed the original action pursuant to the Class Action Fairness Act ("CAFA") to this Court, where it was assigned to Chief Judge Rosenstengel, Case No. 3:20-cv-421-NJR. Plaintiffs did not move to remand or, at the outset, deny they had standing in federal court. Rather, the Court raised the issue of its own jurisdiction, finding it had jurisdiction over the section 15(b) claim but lacked jurisdiction over the

section 15(a) and (c) claims, which it severed and remanded due to Plaintiffs' lack of Article III standing. Apple appealed the remand order, and the Seventh Circuit vacated the order with instructions to consider two Seventh Circuit decisions issued after the initial remand.

3.     In the ensuing briefing to this Court, Plaintiffs expressly disavowed any Article III injury-in-fact with respect to their claims under sections 15(a) and (c). In a June 14, 2021 order, the Court found Plaintiffs had standing for their section 15(a) and (b) claims—which remain before Chief Judge Rosenstengel—but lacked standing for their section 15(c) claim.

4.     The section 15(c) claim was severed and remanded to state court, where Apple moved to dismiss based, in part, on the statements Plaintiffs made to this Court to secure the remand to state court. In opposing the motion, Plaintiffs realized their no-injury claim would be dismissed for failure to state a cognizable cause of action under section 15(c). At the close of argument on the motion, the state court asked the parties to submit proposed orders. Plaintiffs used this chance to prepare an order masking defects in their complaint and including findings contrary to their statements to this Court, which, if properly alleged, would have satisfied the Article III injury-in-fact pleading requirement. Specifically, Plaintiffs included a proposed finding that Plaintiffs' allegation that Apple "otherwise profited" from Plaintiffs' biometric data was an allegation that Apple disseminated their biometric data. The state court adopted Plaintiffs' order with few changes. The state court's order gives rise to this removal because the section 15(c) claim it articulated satisfies the Article III pleading requirement of an injury-in-fact. Apple removes on this basis.

## II.     BACKGROUND

5.     Copies of all process, pleadings, and orders served upon Apple in this matter in the state court are attached as exhibits to this notice. *See* 28 U.S.C. § 1446(a). Plaintiffs' most recent amended state court complaint is **Exhibit 1**. The state court's October 10, 2022 order denying

Apple's motion to dismiss is **<u>Exhibit 2</u>**. An index of the remaining exhibits is provided at the end of this notice.

6.       By filing this notice, Apple does not concede any of Plaintiffs' allegations, assertions, claims, or demands for relief, or that any damages exist. Apple expressly denies that it has violated BIPA, intends to defend this matter vigorously on the merits and as to class certification, and reserves all defenses and objections to Plaintiffs' allegations, assertions, claims, demands for relief, and supposed damages.

A.       **Statement of jurisdiction**

7.       The predicates for removal of Plaintiffs' claim under CAFA—diversity, numerosity, and amount-in-controversy—remain unchanged since the Court's November 12, 2020 order, *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 744 (S.D. Ill. 2020) ("*Hazlitt I*").[1]

8.       "Plaintiffs are residents of Illinois, and Apple is a California corporation." *Compare id. with* Exhibit 1 ¶¶ 10–12, 14.

9.       "[T]he proposed class involves more than the requisite 100 members, as Plaintiffs allege that the putative class includes 'thousands of people.'" *Compare Hazlitt I*, 500 F. Supp. 3d at 744 *with* Exhibit 1 ¶ 208. Plaintiffs "seek to represent [classes] of individuals whose face geometries were collected, stored, and/or used by [Apple]," allegedly through a feature of the Apple Photos app that helps users to sort their photos on their devices based on the people in the photos (the "People album" feature). Exhibit 1 ¶ 6. In paragraph 207, the putative classes are defined as:

   ▪       All Illinois citizens whose faces appeared in one or more photographs taken or
           stored on their own Apple Devices or whose faces appeared in one or more

---

[1] On September 28, 2021, Plaintiff Hazlitt dismissed her individual claims. ECF No. 82 in Case No. 3:20-cv-421-NJR (S.D. Ill. Sept. 28, 2021). The case is now captioned "*Doe v. Apple Inc.*"

photographs stored in their iCloud Photos Library from September 13, 2016 until present.

- All Illinois citizens whose faces appeared in one or more photographs taken or stored on an Apple Device other than their own or whose faces appeared in one or more photographs stored in an iCloud Photos Library other than their own from September 13, 2016 until present.

10.     "Finally, the amount in controversy is satisfied. Plaintiffs seek statutory damages of $5,000 for each intentional and reckless violation of BIPA" and "damages of $1,000 for each negligent violation of BIPA. . . . Even assuming a class size of only 1,000 and without considering attorneys' fees, the Complaint alleges possible damages of $5,000,000." *Compare Hazlitt I*, 500 F. Supp. 3d at 744 *with* Exhibit 1 at page 50.

11.     Removal to this Court is proper because it is the U.S. district court for the district and division embracing the Circuit Court in St. Clair County, Illinois. 28 U.S.C. § 1441(a).

12.     Plaintiffs previously "avoided pleading Article III standing by performing plastic surgery on" their section 15(c) claim, *Hustedt v. Hunter Warfield, Inc.*, 2022 WL 214483, at *6 (N.D. Ind. Jan. 24, 2022), and repeatedly disavowed standing in federal court to secure a remand of this claim to state court. However, Plaintiffs' improper manipulation of the courts' jurisdiction unraveled in state court. *See* Section II.B, below. Faced with potential dismissal of the claim on its merits—for reasons this Court articulated in its orders—Plaintiffs repositioned their claim and contradicted their prior statements to this Court in a proposed order submitted to the state court on October 7, 2022. The state court entered the order on October 10, 2022. *See* Exhibit 2. Apple's removal of the action is based on the state court's October 10, 2022 order.

4

**B.     Procedural history**

**1.     Apple removed Plaintiffs' original action from state court, but the section 15(c) claim was severed and remanded.**

13.     On March 12, 2020, Plaintiffs filed Case Number 20 L 206 against Apple in the Circuit Court for St. Clair County, Illinois (the "Original Action"). Plaintiffs' original complaint is attached as **Exhibit 3**. Plaintiffs alleged Apple collected, stored, and used scans of their face geometries by virtue of the Photos app's People album feature and asserted claims against Apple under BIPA sections 15(a), (b), and (c). *See generally* Exhibit 3.

14.     On May 6, 2020, Apple removed the Original Action to this Court. Apple's first notice of removal (without its exhibits) is attached as **Exhibit 4**.

15.     Plaintiffs did not move to remand the action or deny that they had standing to pursue their claims in federal court. Instead, as part of a November 12, 2020 order on Apple's motion to dismiss the Original Action, the Court evaluated its own jurisdiction. In that order, the Court held that the action satisfied CAFA, but severed and remanded the section 15(a) and (c) claims due to Plaintiffs' lack of Article III standing. *Hazlitt I*, 500 F. Supp. 3d at 744.

16.     On November 24, 2020, Apple filed a petition for leave to appeal the remand order pursuant to 28 U.S.C. § 1453(c), captioned *Hazlitt v. Apple Inc.*, Case No. 20-8033 (7th Cir.). On January 22, 2021, after Apple's petition for leave to appeal had been fully briefed, the Seventh Circuit issued a summary order granting leave to appeal, vacating the remand order, and remanding "with instructions to reconsider in light of *Thornley v. Clearview AI, Inc.*, [984 F.3d 1241 (7th Cir. 2021)], and *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020)." 2021 WL 2451296 (7th Cir. Jan. 22, 2021).

17.     The Court thereafter took supplemental briefing from both parties. Apple argued that Plaintiffs' complaint satisfied the pleading requirement for alleging an Article III injury-in-

fact with respect to all of Plaintiffs' claims. Plaintiffs, however, denied that they had Article III

standing with respect to their section 15(a) or (c) claims, which afforded them a way to split their

claims between two courts and exclude certain claims from this Court's review. With respect to

the section 15(c) claim, Plaintiffs explicitly argued they *lacked* an injury to support federal court

jurisdiction. In a pleading submitted to this Court and signed by counsel under Rule 11, which is

attached as **Exhibit 5**, Plaintiffs argued:

> While Defendant notes *Thornley*'s suggestion that a plaintiff <u>could</u> allege that a
> section 15(c) violation "amplified" the harm caused by the initial collection of
> biometric data [citation omitted], Defendant misleadingly omits the surrounding
> portions of the quote. *Thornley*, 984 F.3d at 1247 ("[A] plaintiff could assert that
> the act of <u>selling her data</u> amplified the invasion of her privacy that occurred when
> the data was first collected, <u>by disseminating</u> it to some unspecified number of other
> people.") (emphasis added). But "Plaintiffs do not allege that Apple sold or
> otherwise profited from their <u>individual</u> biometric data."

Exhibit 5 at 13 (all emphases in original).

18.     On June 14, 2021, the Court entered its second order on Apple's motion to dismiss,

which also addressed the parties' arguments regarding Plaintiffs' standing. *Hazlitt v. Apple Inc.*,

543 F. Supp. 3d 643 (S.D. Ill. 2021) ("*Hazlitt II*"). With respect to the section 15(a) and (b) claims,

the Court found that Plaintiffs had Article III standing, and those claims remain pending in federal

court. *Id.* at 648, 650. However, the Court severed the section 15(c) claim and remanded it to state

court due to Plaintiffs' lack of Article III standing. *Id.* at 652. In finding that Plaintiffs failed to

allege a concrete and particularized injury-in-fact as required for Article III standing, the Court

reasoned:

> a.     "Section 15(c) prohibits entities in possession of a person's or customer's
>        biometric identifiers or information from selling, leasing, trading, or
>        otherwise profiting from that data." *Hazlitt I*, 500 F. Supp. 3d at 747.
>
> b.     By "its plain language, section 15(c) clearly prohibits profiting from 'a
>        person's or a customer's' biometric identifier or biometric information, not
>        the general sales of devices equipped with facial recognition technology."
>        *Id.*

c.    Plaintiffs, however, alleged "that Apple violated section 15(c) by marketing and selling its devices based upon claims that its facial recognition technology could sort photographs, thus profiting from a person's or customer's biometric data." *Id.* (citing Ex. 1 ¶ 181); *see also Hazlitt II*, 543 F. Supp. 3d at 651 (Apple allegedly "uses the facial recognition capabilities of its Photos app to market and sell its devices and software") (citing Ex. 1 ¶ 3).

d.    Plaintiffs did "not allege that Apple sold or otherwise profited from their *individual* biometric data." *Hazlitt I*, 500 F. Supp. 3d at 747 (emphasis original); *Hazlitt II*, 543 F. Supp. 3d at 651 (same).

e.    Plaintiffs did not, and could not, "claim to be personally or individually affected by Apple selling devices based on the facial recognition technology in its Photos app." *Hazlitt I*, 500 F. Supp. 3d at 747; *Hazlitt II*, 543 F. Supp. 3d at 651 ("Plaintiffs do not allege . . . any particularized harm.").

f.    Accordingly, "Plaintiffs [] failed to demonstrate a concrete and particularized injury-in-fact resulting from Apple's purported violation of section 15(c)." *Hazlitt I*, 500 F. Supp. 3d at 747; *Hazlitt II*, 543 F. Supp. 3d at 652 (finding Plaintiffs did not have standing to bring their section 15(c) claim in federal court).

19.    On June 24, 2021, Apple filed a petition for leave to appeal the Court's remand of the section 15(c) claim pursuant to 28 U.S.C. § 1453(c). In their answering brief signed by their counsel and submitted to the Seventh Circuit, attached as **Exhibit 6**, Plaintiffs argued:

*Thornley* noted that the act of "selling [the plaintiff's] data" could cause a concrete and particularized harm by "depriv[ing]" the plaintiff "of the opportunity to profit from her biometric information" or "amplify[ing] the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people." *Thornley*, 984 F.3d at 1247. Or the plaintiff could allege that the collector's profit-seeking activities drove up the cost of using social media sites. *Id.*

*Plaintiffs make no such allegations. . . .*

Exhibit 6 at 12–13 (emphasis added).

20.    On July 28, 2021, the Seventh Circuit denied Apple's petition for leave to appeal, *see* ECF No. 10 in Case No. 21-8019 (7th Cir. July 28, 2021), and the Court's remand of the section 15(c) claim to state court became final.

7

21.     In short, to secure the remand of their section 15(c) claim to state court for lack of Article III standing, Plaintiffs represented to two federal courts that they were *not* alleging that Apple sold, profited from, *or disseminated* their biometric identifiers or information. But after using these representations to convince this Court that it lacked jurisdiction over the section 15(c) claim, Plaintiffs made opposing representations to the state court to prevent the dismissal of the claim on the merits. As explained below, the state court's order—drafted by Plaintiffs—finds that Plaintiffs *have* alleged Apple disseminated their biometric data.

> **2.     The state court's order on the motion to dismiss allows Plaintiffs to proceed on a previously unpleaded theory relating to the supposed dissemination of Plaintiffs' biometric data.**

22.     On August 27, 2021, Apple moved to dismiss Plaintiffs' section 15(c) claim in the state court. Apple's motion and supporting memorandum, Plaintiffs' opposition, and Apple's reply are attached as **Exhibits 7, 8, and 9**. Among other things, Apple argued that Plaintiffs' claim that Apple illegally profited from the sale of devices with biometric capability did not state a cognizable cause of action because, as this Court had determined, by "its plain language, section 15(c) clearly prohibits profiting from 'a person's or a customer's' biometric identifier or biometric information, *not* the general sales of devices equipped with facial recognition technology." *Hazlitt I*, 500 F. Supp. 3d at 747 (emphasis added).

23.     Before the state court could decide Apple's first motion to dismiss, Plaintiffs moved to amend the Complaint on December 14, 2021. Plaintiffs' motion, together with a redline of the complaint Plaintiffs prepared to show the intended changes, is attached as **Exhibit 10**. The December 16, 2021 order granting Plaintiffs' motion is attached as **Exhibit 11**.

24.     Plaintiffs filed their amended complaint on January 20, 2022. *See* Exhibit 1. Although the complaint contained additional allegations regarding Plaintiffs' choice to store their own photos on the cloud, Plaintiffs artfully elected not to allege that Apple possessed and profited

from *their individual* biometric identifiers or information. Instead, they chose to reassert the same sale-of-device theory. *Compare Hazlitt II*, 543 F. Supp. 3d at 651 (citing Ex. 1 ¶¶ 3, 43, 115, 117, 119, 127) *with* Exhibit 1 ¶¶ 3, 42, 169, 171, 173, 182 (retaining the same allegations).

25.     Apple moved to dismiss the amended complaint on March 30, 2022. Apple's motion and supporting memorandum, Plaintiffs' opposition, and Apple's reply are attached as **Exhibits 12, 13, and 14**. Because the amended complaint advanced the same sale-of-device theory, Apple's primary argument was unchanged: Plaintiffs' claim that Apple "profited" because the People album feature on the device allegedly allowed Apple "to market and sell its devices and software" did not state a cognizable cause of action under section 15(c). *See* Exhibit 12 at 5–6 (citing Compl. ¶¶ 3, 181, 219). As Apple demonstrated, based in part on this Court's correct interpretation of section 15(c) in *Hazlitt I*:

> "[O]therwise profit" in section 15(c) "encompasses commercial transactions" [sales, leases] "during which the biometric data is transferred or shared in return for some benefit." [Citation omitted.] The Complaint should be dismissed because no such transaction is alleged.

Exhibit 12 at 7. In opposing the motion to dismiss, Plaintiffs admitted that their claim continued to be that Apple sold devices, not biometric identifiers or information, and denied that they were required to plead publication, conveyance, or dissemination of their biometric data as an element of their claim. Exhibit 13 at 8 n.5, 9.

26.     The state court held oral argument on the motion to dismiss on September 20, 2022. At the conclusion of the argument, the court requested that each party submit a proposed order on the motion to dismiss by October 7, 2022.

27.     A copy of the proposed order Plaintiffs submitted on October 7, 2022, is attached as **Exhibit 15**. After Plaintiffs explicitly denied in papers filed with this Court, the Seventh Circuit, and the state court that they had alleged any dissemination of their (or any) biometric identifiers

or information, they proposed an order stating the exact opposite: that Apple "commercially disseminates biometric data." Exhibit 15 at 6 (citing Exhibit 1 ¶¶ 77, 80–83, 164).

28.     On October 10, 2022, the state court denied Apple's motion to dismiss and entered Plaintiffs' order with minimal modification. Exhibit 2; *see also* **Exhibit 16** (redline showing changes between Plaintiffs' draft order and as-entered order). The claim described in the state court's order is not the claim Plaintiffs pleaded or that this Court severed and remanded (*i.e.*, the claim for selling devices, the claim that did not allege Apple sold or profited from Plaintiffs' biometric data). Rather, the order—which Plaintiffs drafted for the state court's entry and the state court entered virtually without change—finds:

a.      Plaintiffs allege Apple's "section 15(c) violation invaded the legal rights of Plaintiffs . . . ," *id.* at 7;

b.      Plaintiffs adequately allege "that Defendant possessed *Plaintiffs'* biometric data," including through their "devices through facial recognition software (i.e., the Photos App)," *id.* at 3 (emphasis added);

c.      "Plaintiffs have adequately alleged that the Defendant profits from biometric data," *id.* at 6;

d.      "[A]n allegation that a defendant otherwise profit[s] from biometric data *entails* (i.e., includes by necessity) the conclusion that a publication, conveyance, or dissemination of biometric data has occurred," *id.* (quotations omitted);

e.      "Plaintiffs sufficiently allege that biometric data is itself so incorporated into Defendant's product that by marketing the product, [Apple] is commercially disseminating the biometric data," *id.* (quotations omitted); and

f.      Plaintiffs allege "that Defendant commercially disseminates biometric data by incorporating that data into Defendant's devices," *id.* (citing Exhibit 1 ¶¶ 77, 80–83, 164).

29.     According to the complaint, "[e]ach Plaintiff has used one or more Apple Devices" and "Defendant's facial recognition technology has collected Biometric Data . . . from Plaintiffs." Exhibit 1 ¶ 198. "The biometric identifiers *at issue* are the scans of face geometries of individuals,

including Plaintiffs." *Id.* ¶ 26 (emphasis added).   And "Plaintiffs' face geometries have been scanned by Defendant, and their Biometric Data [] collected, stored, *and used* by Defendant, *as more fully described herein*." *Id.* ¶ 13 (emphasis added). Thus, once the state court endorsed Plaintiffs' proposed order finding that they alleged Apple violated section 15(c) and "invaded the legal rights of Plaintiffs" by "commercially disseminating" biometric data incorporated into devices, which Plaintiffs used, the complaint necessarily alleged that Plaintiffs' data was included. Notwithstanding Plaintiffs' prior representations to this Court that they did not allege dissemination of their data (an effort to manipulate jurisdiction), their latest repositioning of the claim in the state court order subjects the section 15(c) claim to removal.

30.    Apple is timely filing this notice within 30 days of its receipt of the October 10, 2022 state court order denying Apple's motion to dismiss. *See id.*

## III.    REMOVAL IS PROPER UNDER CAFA

### A.    The action satisfies the three requirements for removal under CAFA and is timely.

31.    As amended by CAFA, 28 U.S.C. § 1332(d) grants U.S. district courts original jurisdiction over "any civil action" in which: (a) the aggregate number of members in the proposed class is 100 or more; (b) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (c) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

32.    **This is a "class action" under CAFA**. Because Plaintiffs invoke procedures "authorizing an action to be brought by 1 or more representative persons as a class action," this matter qualifies as a "class action" for purposes of CAFA. 28 U.S.C. § 1332(d)(1)(B).

33.    **The putative class contains at least 100 members**. Under controlling precedent, Apple "may rely on the estimate of the class number set forth in the complaint." *Schutte v. Ciox*

*Health, LLC*, 28 F.4th 850, 855 (7th Cir. 2022) (quoting *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017)). Here, Plaintiffs allege that the putative class numbers in the "thousands." Exhibit 1 ¶ 208.

34.     **The amount placed in controversy exceeds $5,000,000**. The amount in controversy under CAFA is determined by aggregating the "claims of the individual class members." 28 U.S.C. § 1332(d)(6). The burden for removing under CAFA is low and requires only a "reasonable particularity that the *stakes* exceed the maximum." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis added); *see also Schutte*, 28 F.4th at 854 (plausible, good-faith estimate). Apple need not "confess liability" or offer "proof" of damages, since it may rely on "*what the plaintiff is claiming*." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (emphasis added). Here, Apple denies that actual damages to Plaintiffs, if any, are quantifiable; that statutory damages may be awarded; and that certification of a class is appropriate. However, solely for the purposes of removal, the amount in controversy is determined by what the plaintiffs claim is at stake: here, up to $5,000 in statutory damages per supposed violation of BIPA for allegedly "thousands" of putative class members. Exhibit 1 at 50 and ¶ 208.

35.     **Diversity is undisputed**. Plaintiffs, all of whom allegedly reside in Illinois, and Apple, a California corporation with its principal place of business in California, satisfy the minimal diversity requirements under 28 U.S.C. § 1332(d)(2)(A). *See e.g.*, *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 965–66 (7th Cir. 2016) (holding that diversity existed where Illinois class representatives sued a Delaware corporation with its principal place of business in Arizona).

36.     **Apple's removal is timely**. As set forth above, this Court found that the section 15(c) claim "stated by the initial pleading [was] not removable" due to Plaintiffs' lack of Article

III standing. *See* 28 U.S.C. § 1446(b)(3). But "[r]emoval is not a one-shot proposition," and a "defendant may remove even a previously remanded case if subsequent pleadings or litigation events reveal a new basis for removal." *Railey v. Sunset Food Mart, Inc.*, 16 F.4th 234, 238 (7th Cir. 2021). The state court's October 10, 2022 order denying Apple's motion to dismiss is such a litigation event establishing a new basis for removal grounded in the alleged dissemination of Plaintiffs' biometric data. As demonstrated herein, the state court's conclusion that Plaintiffs allege "commercial dissemination" of biometric data does not just read into the complaint a new theory Plaintiffs never alleged; it affirmatively contradicts the representations Plaintiffs made to this Court to secure the remand of their section 15(c) claim. *See* ¶¶ 16–18, 20, above. Plaintiffs have advanced these contradictory positions in different courts to avoid scrutiny of their actual claim after this Court correctly determined—nearly a year ago—that section 15(c) does not prohibit "the general sales of devices equipped with facial recognition technology." *Hazlitt I*, 500 F. Supp. 3d at 747. Such "chameleonic" litigation tactics improperly "manipulate" the courts and "perver[t] the judicial process," and Apple reserves the right to seek appropriate relief. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (court properly granted summary judgment after applying judicial estoppel).

37.     Nevertheless, the claim first articulated in the October 10, 2022 order—and to which Plaintiffs will now be limited—is one that is removable. *See* Section III.B, below (allegations of dissemination of private data confer Article III standing the court previously found lacking). The October 10, 2022 order is the "amended pleading, motion, *order* or other paper from which it may first be ascertained that the case is one which is or *has become* removable." 28 U.S.C. § 1446(b)(3) (emphases added). Apple is filing this notice within 30 days of the October 10, 2022 order. *Id.*

   **B.**  **The order articulates a concrete and individualized injury-in-fact that confers Article III standing on Plaintiffs.**

38.    "Without Article III standing, federal courts have no authority to resolve a case for want of subject matter jurisdiction. Article III standing requires: (1) plaintiffs to suffer an actual or imminent, concrete and particularized injury-in-fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury can be redressed by a favorable decision." *Hazlitt II*, 543 F. Supp. 3d at 648 (citations omitted). "A statutory violation," as Plaintiffs allege here, "must present an appreciable risk of harm to the underlying concrete interest the legislature sought to protect by enacting the statute." *Id.* (quotation omitted). "[A]llegations matter," *Thornley*, 984 F.3d at 1346, and "[s]tanding often depends on what theory a plaintiff advances and how injury would be proved." *Smith v. GC Servs. LP*, 986 F.3d 708, 711 (7th Cir. 2021).

39.    Here, Plaintiffs have Article III standing based on the order's conclusion that Plaintiffs have alleged an unlawful dissemination of their private, biometric data. "[T]he unlawful disclosure of biometric data invades an individual's private domain 'just as surely as an unconsented collection or retention does.'" *Patterson v. Respondus, Inc.*, ___ F. Supp. 3d ___, 2022 WL 860946, at *8 (N.D. Ill. 2022) (finding plaintiffs had standing to maintain a claim for dissemination of biometric data under section 15(d)) (quoting *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021). Indeed, the "disclosure of private information" is an injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); *see also Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1153–54 (7th Cir. 2022) (finding Article III injury based on dissemination of plaintiffs' information); *Liu v. Radius Global Sol'ns, LLC*, 2021 WL 4167585, at *2 (N.D. Ill. Sept. 14, 2021) ("The disclosure of private information is a harm traditionally

recognized as cognizable"); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 575 (N.D. Ill. 2020) (finding "the wrongful disclosure of [plaintiff's] private information," "a violation of his own rights," "enough to show injury-in-fact"); *Henry v. Teletrack, Inc.*, 2012 WL 769763, at *3 (N.D. Ill. Mar. 7, 2012) (finding allegation of sale and "unlawful disclosure" of plaintiffs' information "adequately alleged an individual injury in fact").

40.     That Plaintiffs have Article III standing (but not a meritorious claim) is underscored by the legislature's intent in enacting section 15(c). The "concrete interest" the Illinois legislature sought to protect via BIPA was individuals' "right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33. "The duties imposed on private entities by section 15 . . . regarding the collection, retention, *disclosure*, and destruction of a person's or customer's biometric identifiers or biometric information *define the contours of that statutory right*." *Id.* (emphasis added). The duty imposed by section 15(c) regards disclosure of a person's biometric data, and the "contours" of the "statutory right" defined by that duty are to prevent the sale or other disclosure (dissemination) of one's biometric identifiers or biometric information for profit. *See* 740 ILCS 14/15(c). Or, as set forth in the order adopted by the state court and drafted by Plaintiffs, there can be no profiting from a person's biometric data (and no violation of section 15(c)) without the publication, conveyance, or dissemination of that person's biometric identifier or biometric information. Exhibit 2 at 6 (finding the statutory phrase "otherwise profit" to "*entail*[] (i.e., include[] by necessity) the conclusion that a publication, conveyance, or dissemination of biometric data has occurred") (quotation omitted). Thus, under the state court's reasoning, section 15(c) does not confer a public or procedural right, but rather an individualized and concrete right against the commercial dissemination of an individual's own biometric identifiers or biometric information.

41.     Finally, the Seventh Circuit's decision in *Thornley* confirms that Plaintiffs have Article III standing with respect to the section 15(c) claim articulated in the state court's order. In *Thornley*, the court expressed "no quarrel" with the idea that Article III would be satisfied where a plaintiff asserted that "the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, *by disseminating it to some unspecified number of other people.*" 984 F.3d at 1247 (emphasis added). As the law has developed following *Thornley*, dissemination of the biometric data is a necessary part of a well-pleaded section 15(c) claim. *See* Exhibit 2 at 6; *see also Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563, ¶ 33 (finding that a violation of section 15(c) entails a dissemination of biometric data). Thus, while Plaintiffs earlier disclaimed allegations of dissemination in federal court, Exhibits 5 at 13 and 6 at 12–13, in the state court, they embraced such allegations and proposed an order finding that their complaint alleged dissemination. *See* Exhibit 2 at 6. The Northern District of Illinois has acknowledged that, if *Tims* controls and requires dissemination—as the state court's October 10, 2022 order acknowledges—section 15(c) claims that were previously remanded based on a plaintiff's lack of standing would be properly removed to federal court. *Kashkeesh v. Microsoft Corp.*, 2022 LW 2340876, at *3 (N.D. Ill. June 29, 2022).

42.     Previously, the Court remanded Plaintiffs' section 15(c) claim after finding—based in part on Plaintiffs' representations to the Court—that Plaintiffs did "not allege Apple sold or otherwise profited from their *individual* biometric data" and alleged only that "Apple used its facial recognition technology to sell more devices." *Hazlitt II*, 543 F. Supp. 3d at 651. However, the proposed order Plaintiffs submitted to the state court (that was then entered) necessarily disavowed these statements when it concluded "Plaintiffs allege Defendant's section 15(c) violation invaded

the legal rights *of Plaintiffs*." Exhibit 2 at 7. As set forth above, Plaintiffs' "legal right" that Apple

allegedly invaded is the right against the sale or disclosure of biometric data for a profit.

43.     Nor can Plaintiffs escape their allegations that their individual biometric data is

subjected to their newly restated claim, as set forth for the first time in the state court's order.

Although the Court found these allegations insufficient to plead Article III standing under

Plaintiffs' originally-pleaded theory, now that they have restated their claim as one involving

dissemination of biometric data, these allegations plead standing:

>     a.     "Each Plaintiff has used one or more Apple Devices" and "Defendant's
>            facial recognition technology has collected Biometric Data . . . from
>            Plaintiffs." Exhibit 1 ¶ 198.
>
>     b.     "Plaintiffs' face geometries have been scanned by Defendant, and their
>            Biometric Data [] collected, stored, and *used* by Defendant, *as more fully
>            described herein*." *Id.* ¶ 13 (emphasis added).
>
>     c.     "The biometric identifiers at issue are the scans of face geometries of
>            individuals, including *Plaintiffs*." *Id.* ¶ 26.

44.     Contrary to Plaintiffs' allegations, Apple does not profit "from the Biometric Data

collected by Apple Devices through the sale of those devices." Exhibit 1 ¶ 168. But the state court

has allowed that claim to proceed based on Plaintiffs' description of the current complaint, which

the court found contains allegations that Apple "commercially disseminates biometric data by

incorporating that data into Defendant's devices." Exhibit 2 at 6. That same complaint alleges that

each Plaintiff used the devices at issue, and that Apple collected *Plaintiffs'* biometric data onto

their devices and used and profited from *Plaintiffs'* biometric data "as described herein." Exhibit

1 ¶¶ 13, 198. Furthermore, under the order's reasoning, the allegation that Apple "violated BIPA

section 15(c) by profiting from *Plaintiffs'* . . . biometric identifiers and biometric information,"

Exhibit 1 ¶ 219 (emphasis added), "*entails* (i.e., includes by necessity)" a "publication,

conveyance, or dissemination of" *Plaintiffs'* biometric data, Exhibit 2 at 6 (quotation omitted).

Thus, as the state court construed the section 15(c) claim in the order, Plaintiffs have Article III standing to proceed in federal court.

## IV.     CONCLUSION

Apple therefore removes this action from the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois, and respectfully requests that the action proceed in this Court as a matter properly removed. A copy of the notice required under 28 U.S.C. § 1446(d) is attached as **Exhibit 17**, which Apple will promptly provide to Plaintiffs and file with the Clerk of the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois.

**Dated**: November 4, 2022

**Respectfully Submitted**,

Apple Inc.

By:      /s/ *Eric M. Roberts*
         One of its attorneys

Raj N. Shah (ARDC # 06244821)
Eric M. Roberts (ARDC # 6306839)
Matthew J. Freilich (ARDC # 6332688)
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000
raj.shah@dlapiper.com
eric.roberts@dlapiper.com
matt.freilich@dlapiper.com

Russell K. Scott (ARDC # 02533642)
Greensfelder Hemker & Gale PC
12 Wolf Creek Drive, Suite 100
Belleville, Illinois 62226
618.239.3612
rks@greensfelder.com

Isabelle L. Ord*
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105
415.836.2500
isabelle.ord@dlapiper.com

* motion to appear *pro hac vice* forthcoming

## <u>Certificate of Service</u>

I hereby certify that on November 4, 2022, I electronically filed the foregoing **Notice of Removal** with the Clerk of Court using the CM/ECF system. I further certify that I caused a true and correct copy of the foregoing to be served by electronic mail and U.S. Postal Mail delivery upon the following counsel of record:

Jerome J. Schlichter
jschlichter@uselaws.com
Andrew D. Schlichter
aschlichter@uselaws.com
Alexander L. Braitberg
abraitberg@uselaws.com
Nathan H. Emmons
nemmons@uselaws.com
**Schlichter Bogard & Denton, LLP**
100 South Fourth Street, Suite 1200
St. Louis, MO 63102

Christian G. Montroy
cmontroy@montroylaw.com
**Montroy Law Offices, LLC**
2416 North Center
P.O. Box 369
Maryville, IL 62062

*Attorneys for Plaintiffs*

/s/ Eric M. Roberts
Eric M. Roberts